UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RUDOLPH P. PRISCO,

                              Plaintiff,

              -against-                                    1:13-MC-0066 (LEK/CFH)

INTERNAL REVENUE SERVICE,

                              Defendant.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

Plaintiff Rudolph P. Prisco ("Plaintiff")[1] has filed a Motion for an injunction pending his

appeal of a bankruptcy court order dissolving a temporary restraining order prohibiting Defendant

Internal Revenue Service ("IRS") from collecting certain tax liabilities.  Dkt. No. 1 ("Motion"); No.

07-13408, Oct. 31, 2013 Text Order ("Dissolution Order") (Bankr. N.D.N.Y. Dec. 12, 2007).[2]  For

the following reasons, the Motion is denied.

## II.   BACKGROUND

On December 12, 2007, Plaintiff filed a bankruptcy petition pursuant to Chapter 13 of the

United States Bankruptcy Code (the "Code"), 11 U.S.C. § 1301 et seq.  Dkt. No. 1 ("Petition").  The

IRS filed a proof of claim, and then amended that proof of claim twice.  See Claims 7-1 to -3.  The

_____

[1] Plaintiff has not paid the filing fee or filed a motion for *in forma pauperis* status.  However,
because the bankruptcy court has previously granted Plaintiff *in forma pauperis* status, see No. 07-
13408, Dkt. No. 226 (Bankr. N.D.N.Y. Feb. 3, 2012), and because Plaintiff's Motion details his
continuing financial hardships, see Dkt. 1 ("Motion"), the Court *sua sponte* grants Plaintiff *in forma
pauperis* status.

[2] All subsequent docket citations will be to the docket of the bankruptcy case, unless
otherwise noted.

final amended proof of claim submitted by the IRS asserted a $504.91 unsecured priority claim for

2005 and 2006 unpaid taxes as well as interest accruing through the filing date of the Petition.

Claim 7-3.  The IRS also asserted a $1,144.65 unsecured general claim: $256.72 for penalties for the

unpaid 2005 and 2006 taxes, and the remainder for unpaid taxes, penalties, and interest for 2000.

Id.

Plaintiff then submitted a series of proposed bankruptcy plans, the third of which was

confirmed by the Bankruptcy Court.  See Dkt. Nos. 3; 35; 63 ("Plan"); 70 ("Confirmation Order").

The Plan provided that the IRS would receive full payment for its $504.91 unsecured priority claim.

Id. at 2.  Plaintiff then submitted an amended plan after the Plan had been confirmed.  See Dkt. No.

93 ("Amended Plan").  The Amended Plan, which also provided for full payment of the unsecured

priority claim, was approved by the bankruptcy court.  See Dkt. No. 92; Text Order of January 8,

2008.  Plaintiff made all required payments, and by September 11, 2009, the bankruptcy trustee

reported that the IRS had received full payment for its $504.91 unsecured priority claim and $8.46

for its unsecured general claim.  See Dkt. No. 152.  However, before the bankruptcy court issued

Plaintiff a discharge pursuant to Chapter 13, it learned that he had failed to disclose a personal

injury claim as an asset of his estate.  See Dkt. No. 172 ("Conversion Order").  It therefore

converted Plaintiff's bankruptcy case from one under Chapter 13 to one under Chapter 7.

Conversion Order.  On November 11, 2011, Plaintiff was granted a discharge pursuant to 11 U.S.C.

§ 727.  Dkt. No. 208 ("Discharge").

On October 16, 2013, Plaintiff filed a motion seeking to enjoin the IRS's collection of debts

that Plaintiff alleged had been "valued and addressed within the bankruptcy."  Dkt. No. 249

("Motion to Enjoin") at 1, 3, 6.  Plaintiff then filed an application for a temporary restraining order

prohibiting the IRS from garnishing his Social Security payments, which IRS notices indicated

would begin on November 1, 2013.  Dkt. No. 252 ("TRO Application").  A hearing regarding

Plaintiff's application was held a week later; the IRS did not attend.  See Dkt. No. 253; Text Notice

of October 23, 2013.  The following day, the Bankruptcy Court issued a temporary restraining order

prohibiting the IRS from its collection efforts until a November 4, 2013 hearing.  Dkt. No. 256

("TRO").  The IRS then responded to Plaintiff's Motion to Enjoin and moved to dissolve the TRO.

See Dkt. Nos. 257 ("Response"); 258 ("Motion to Dissolve").  The IRS acknowledged that it was

seeking to collect $370.98 attributable to interest or penalties on the 2005 and 2006 tax liabilities.

See Resp. ¶ 6.  Plaintiff filed a memorandum of law in opposition to the Response and Motion to

Dissolve.  Dkt. No. 261 ("Memorandum").  The bankruptcy court then granted the Motion to

Dissolve and denied Plaintiff's Motion to Enjoin and TRO Application.  See Dissolution Order.

Plaintiff filed his Motion with the Court the same day the TRO was dissolved.  He seeks to

"enjoin the IRS from any collection."  Mot.[3]  The Bankruptcy court subsequently issued written

opinions dissolving the TRO and denying Plaintiff's Motion to Enjoin and TRO Application.  See

Dkt. Nos. 262 ("Dissolution Opinion"); 263 ("Denial Opinion").

## III.    LEGAL STANDARD

### A.  Injunction Pending Appeal

Plaintiff does not offer a specific procedural basis for his Motion.  See Mot.  However, he

states that the bankruptcy court "issued a TRO and dismissed same today" and that he "is seeking to

enjoin the IRS from any collection . . . [p]ending appeal."  Id.  The Court therefore construes the

Motion as a Federal Rule of Civil Procedure 62(c) motion to enjoin the IRS's collection efforts

---

[3] Plaintiff attached a copy of the TRO Application to his Motion.

pending Plaintiff's appeal of the Dissolution Order.  See FED. R. CIV. P. 62(c) ("While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction."); In re Miller, 263 B.R. 183 (N.D.N.Y. 2001) (Kahn, J.) (ruling on debtor's request, pursuant to Federal Rule of Civil Procedure 62(c), to enjoin actions against his estate pending resolution of his appeal of the bankruptcy court's dismissal of his petition).

"The standard in this circuit for a stay or injunction pending appeal is (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected."  LaRouche v. Kezer, 20 F.3d 68, 72 (2d Cir. 1994) (quotation marks omitted); see also In Re Miller, 263 B.R. at 185.  "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other."  Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002) (quotation marks and alteration omitted).  Nevertheless, even significant irreparable injury will not support an injunction where a plaintiff does not demonstrate the requisite substantial possibility of prevailing.  Id. at 103.  Thus, if a plaintiff fails to make such a demonstration, a court may deny her motion without considering other factors.  See In re Miller, 263 B.R. at 187 ("[Plaintiff] needed to provide evidence indicating a substantial possibility of success in his appeal of the Bankruptcy Court's . . . determination.  Since he has not done so, his request for a stay pending appeal must, as a matter of law, be denied.").

IV.    DISCUSSION

4

**A. The Anti-Injunction Act**

The Anti-Injunction Act, 26 U.S.C. § 7421(a) (the "Act"),[4] provides that, except for certain enumerated exceptions inapplicable here, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." "The object of § 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 5 (1962). "Under the Anti-Injunction Act, the United States is permitted 'to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue.'" Follum v. United States, No. 98-CV-0126A, 1999 WL 250746, at *3 (W.D.N.Y. Mar. 5, 1999) (quoting Enochs, 370 U.S. at 7).

The IRS asserts that the bankruptcy court lacked jurisdiction under the Act to issue the TRO. Mot. to Dissolve at 3. If the Act applies, Plaintiff's Motion must be denied for two related reasons. First, his appeal of the Dissolution Order would have no likelihood of success, because the bankruptcy court had no jurisdiction to issue or maintain the TRO and thus was compelled to dissolve it. Second, the Court would not have jurisdiction to grant the injunctive relief Plaintiff seeks.

The IRS and Plaintiff suggest three possible grounds for the Act's inapplicability. Plaintiff

---

[4] 26 U.S.C. § 7421(a) is also known as the "Tax Anti-Injunction Act." United States v. Bond, 486 B.R. 9, 38 (E.D.N.Y. 2012). It should not be confused with either 28 U.S.C. § 2283, which limits federal courts' power to enjoin state court proceedings and is referred to as the "Anti-Injunction Act," Smith v. Bayer Corp., 131 S.Ct. 2368, 2737 (2011), or 28 U.S.C. § 1341, which limits federal district courts' power to enjoin the collection of state taxes and is referred to as the "Tax Injunction Act." McCrory Corp. v. Ohio, 212 B.R. 229, 232 (S.D.N.Y. 1997).

argues that the Act does not apply because: (1) the interest and penalties the IRS is seeking to collect do not constitute "taxes" covered by the Act; and (2) the Act is inapplicable to bankruptcy courts. See Mem at 10. The IRS points to a narrow judicially created exception to the Act. See Mot. to Dissolve at 2-3.

### 1. Penalties and Interest as "Taxes" Under the Act

Plaintiff correctly notes that the Act applies only to "taxes." Mem at 10. He therefore concludes that it is inapplicable to the penalties and interest that the IRS is now seeking to collect. Id. But an exaction described by the Internal Revenue Code as a "penalty" or "interest" may constitute a "tax" for purposes of the Act if Congress has so indicated. See Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566, 2584 (2012); Seven-Sky v. Holder, 661 F.3d 1, 7 (D.C. Cir. 2011), abrogated on other grounds by Sebelius, 132 S. Ct. 2566. Here, the IRS seeks late-filing and -payment penalties pursuant to 26 U.S.C. § 6651. See Resp. ¶ 5. 26 U.S.C. § 6651 is contained in subchapter A of Chapter 68 of the Internal Revenue Code. This subchapter provides that "any reference in [Title 26] to 'tax' imposed by [Title 26] shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter." 26 U.S.C. § 6665. The Act is found in Title 26. See 26 U.S.C. § 7421(a). The penalties the IRS is seeking therefore constitute "taxes" under the Act. See Thomas More Law Ctr. v. Obama, 651 F.3d 529, 540 (6th Cir. 2011) (noting that Chapter 68 penalties "count as 'taxes' for purposes of the Anti-Injunction Act"), abrogated on other grounds by Sebelius, 132 S. Ct. 2566; Seven-Sky, 661 F.3d at 7 ("Congress expressly defined taxes to include penalties for nonpayment of taxes imposed under Chapter 68, subchapter A."); see also Sebelius, 132 S. Ct. at 2584 (noting that identical language in subchapter B of Chapter 68 renders penalties provided for in that subchapter subject to the Act). "Similarly, the

Anti-Injunction Act applies to interest due on taxes because of identical language in another section of the Code requiring that this interest be treated as a tax." Seven-Sky, 661 F.3d at 12 (citing 26 U.S.C. § 6601(e)(1)). The penalties and interest the IRS is seeking to recover therefore constitute "taxes" under the Act.

### 2. The Act's Applicability to Bankruptcy Courts

Plaintiff also argues that the Act is inapplicable to bankruptcy courts, and in particular bankruptcy court orders enforcing automatic stays and discharge injunctions. See Mem. at 10. A number of courts have held that the Code's animating policy of fully governing a debtor's bankruptcy implicitly trumps the Act and allows bankruptcy courts to enjoin IRS collection efforts. See, e.g., Bostwick v. United States, 521 F.2d 741, 744 (8th Cir. 1975) (finding that the Bankruptcy Code's predecessor, the Bankruptcy Act, was "a complete scheme governing bankruptcy which overrides the general policy represented by the [Act]" and that a bankruptcy court may enjoin collection activities "to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act"); In re Moore, No. 08-40118, 2013 WL 4017936, at *4 (Bankr. M.D. Ga. Aug. 6, 2013) (determining that Congress "could not possibly have intended" the Act to cover orders enjoining IRS violations of discharge injunctions); In re Szwyd, 408 B.R. 547, 552-53 (Bankr. D. Mass. 2009) (relying solely on Bostwick and its progeny in determining that the Act is inapplicable to the Code); In re Jon Co., Inc., 30 B.R. 831, 834-35 (D. Colo. 1983) (making a "policy choice between the government's need to collect taxes and the orderly administration" of bankruptcies and choosing to follow Bostwick ); In re H & R Ice Co., Inc., 24 B.R. 28, 31 (Bankr. W.D. Mo. 1982) (noting that the Act's and Bankruptcy Code's policies "collide[]" and following Bostwick's resolution of that conflict). However, the reasoning

behind <u>Bostwick</u>, the only court of appeals case so holding and the basis for most subsequent opinions that hold likewise, was limited by a subsequent Eighth Circuit decision.  <u>See</u> <u>A to Z Welding & Mfg. Co., Inc. v. United States</u>, 803 F.2d 932, 933 (8th Cir. 1986) (finding, without analysis of the policies animating the Bankruptcy Code, that a bankruptcy court's enjoinder of the collection of taxes assessed against officers of a debtor corporation was prohibited by the Act); <u>see also</u> <u>In re John Renton Young, Ltd.</u>, 87 B.R. 635, 638 (Bankr. D. Nev. 1988) (noting that <u>A to Z Welding</u> "derailed" the "bankruptcy policy exception" of <u>Bostwick</u> and that "the cases which have held that the Anti-Injunction Act did not bar relief by the bankruptcy court have either been reversed or have relied upon cases which have been reversed.").

Three courts of appeals, and the majority of other courts, including courts in this circuit, have taken the opposite view and found the Act applicable to bankruptcy courts.  Many of these decisions acknowledge that certain Code provisions, including 11 U.S.C. § 105(a), which provides bankruptcy courts with the broad authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and 11 U.S.C. § 505, which permits bankruptcy court to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax," implicitly contemplate the issuance of tax-collection injunctions when read in conjunction with one another.  Nevertheless, the Act has been found applicable in light of: (1) its unequivocal language withdrawing jurisdiction to over the issuance of tax-collection injunctions from of "any court"; (2) Congress's repeated and pointed non-inclusion of bankruptcy courts or bankruptcy court orders in the Act's enumerated exceptions; and (3) the failure of any single Code provision—including § 105(a)—to explicitly grant bankruptcy courts the power to enjoin IRS collection activities.  <u>See</u> <u>In re Becker's Motor Transp., Inc.</u>, 632 F.2d 242, 246 (3d Cir.

1980) (finding that the Act applicable to bankruptcy courts because, among other things, Congress did not explicitly except them from the Act even though it enacted additional exceptions *after* it enacted 11 U.S.C. § 505); In re J.J. Re-Bar Corp., Inc., 644 F.3d 952 (9th Cir. 2011); In re Am. Bicycle Ass'n, 895 F.2d 1277, 1279-80 (9th Cir. 1990) (noting that, while 11 U.S.C. § 105(a) appears to be "all encompassing," it is not as "specific and unequivocal" as the Anti-Injunction Act); In re LaSalle Rolling Mills, Inc., 832 F.2d 390, 394 (7th Cir. 1987) (following In re Becker's); Bond, 486 B.R. at 3 (deeming the Act applicable to bankruptcy court orders); In re Pressimone, 39 B.R. 240, 243-46 (N.D.N.Y. 1984) (finding that nothing in the language of § 105(a) or its legislative history indicated that Congress intended it to supercede the Act); In re John Renton Young, Ltd., 87 B.R. 635, 637-38 (Bankr. D. Nev. 1988) (rejecting argument that § 105 overrides the Anti-Injunction Act); In re Scott Cable Commc'ns, Inc., 227 B.R. 596, 602 (Bankr. D. Conn. 1998) (finding that the Act applies to bankruptcy proceedings because its"specific and unequivocal intent . . . is not overridden by the more general authority granted to the bankruptcy court under 11 U.S.C. § 105(a)" (alterations and quotation marks omitted));[5] see also In re Petrusch, 667 F.2d 297

---

[5] These decisions, while noting the strong revenue-collection policy behind the Act, have expressly refused to weigh this policy against the policies animating the Code, instead resting the determination that the Act applies on the aforementioned statutory considerations. See, e.g., In re Becker's, 632 F.2d at 246 (3d Cir. 1980) ("Although there may be some merit in permitting the policy behind the Bankruptcy Act to outweigh the rationale that underpins the antiinjunction legislation, such argument should be addressed to Congress."); In re LaSalle Rolling Mills, 832 F.2d at 394 ("Whatever the merit of [the] argument that current law allows the IRS a latitude to collect taxes owing that is incompatible with orderly administration in bankruptcy, it should be made to Congress, not to us."); In re Pressimone, 39 B.R. at 246 (noting that courts that have found the Act inapplicable to bankruptcy orders have "expressed a laudable concern for the rehabilitation of debtors, and for the need to allow the bankruptcy court broad latitude in accomplishing the objectives of title 11. However, in so doing such courts have independently weighed the competing policy objectives at stake, thereby substituting their own judgment for that of Congress."(citation omitted)).

(2d Cir. 1981) (finding a Code provision subject to the Norris-LaGuardia Act, 29 U.S.C. § 101, because neither the provision's enacting legislation nor its legislative history explicitly excepted it from that statute).  These decisions' analyses of the language of the Code and the Act, as well as of Congress's repeated failure to except the Code from the Act,[6] are persuasive.  The Court embraces their reasoning and declines to engage in the policy balancing upon which decisions to the contrary are premised.  The Court therefore finds that the Act is applicable to bankruptcy courts.

A less frequently advanced argument for the inapplicability of the Act is premised on the Code's sovereign immunity waiver. The Code explicitly waives sovereign immunity with respect to a number of the Code provisions at issue at issue in this case.  See 11 U.S.C. § 106 (a).  A few courts have held that this waiver excepts these provisions from the Act.  See In re G-I Holdings Inc., 420 B.R. 216, 280-81 (D.N.J. 2009); In re Steinke, No. 10-36588, 2013 WL 5476064, at *2-3 (Bankr. D. Colo. June 12, 2013).  However, these decisions rest on a faulty premise: sovereign immunity and the Act are one and the same.  See Bunyan v. Herbert, No. 95-56133, 1997 WL 14432, at *1 (9th Cir. 1997) ("Whether or not the remaining claims fall within the Bankruptcy Code's waiver of sovereign immunity, they are barred by the Tax Anti-Injunction Act." (citation omitted)); In re Carey, No. 10-1017, 2010 WL 5600987, at *6 (B.A.P. 9th Cir. Nov. 30, 2010) (noting that the § 106 sovereign immunity waiver and the Act should not be "confuse[d]"); In re Harchar, No. 98-13277, 2006 WL 3196846, at *2-3, *7 (Bankr. N.D. Ohio Oct. 4, 2006) (noting § 106 but finding that the Act applied to effort to enjoin IRS's collection efforts); In re Pressimone, 39

---

[6] The Court notes that Congress's failure to provide such an exception is particularly telling in light of its provision of a *damages*, rather than an injunctive, remedy for IRS violations of a discharge injunction or automatic stay.  See 26 U.S.C. § 7433(e).

B.R. at 242-43 (same).[7] Moreover, the Code's waiver of sovereign immunity provides that "[t]he enforcement of any . . . order, process, or judgment against any governmental unit shall be consistent with appropriate *nonbankruptcy law* applicable to such governmental unit." 11 U.S.C. § 106 (a)(4) (emphasis added). As discussed *supra*, the Act is, by its plain terms, a nonbankruptcy law applicable to the IRS. The Code's waiver of sovereign immunity therefore does not render the Act inapplicable to bankruptcy court orders.

### 3. Judicially Created Exception to the Act

A narrow, judicially created exception to the Act applies only where a plaintiff can demonstrate: "(1) that 'it is clear that under no circumstances could the Government ultimately prevail' on the tax liability and (2) that 'equity jurisdiction otherwise exists' because the taxpayer would suffer irreparable injury if collection were effected." Randell v. United States, 64 F.3d 101, 106-7 (2d Cir. 1995) (quoting Enochs, 370 U.S. at 7)); see also Tucker v. United States, No. 96-CV-6039, 1998 WL 708923, at *2 (E.D.N.Y. July 6, 1998) (citing Bob Jones Univ. v. Simon, 416 U.S. 725,742-46 (1974); Enochs, 370 U.S. at 7). In applying this exception, a court must "take the view of the facts that is most liberal to the [IRS,] not to the taxpayer seeking injunctive relief." Randell, 64 F.3d at 107 (quotation omitted). Thus, to prevail on his Motion, Plaintiff must demonstrate a substantial possibility that he will be able to meet the heavy burden of showing that the IRS cannot, under any circumstances, prevail on its claim that it is entitled to the penalties and interest it is

---

[7] Although the Second Circuit has described the Act as the "codific[ation]" of sovereign immunity with respect to tax assessment and collection, it has also recognized that the Act has an animating practical purpose that extends far beyond traditional sovereign immunity principles. Randell v. United States, 64 F.3d 101, 106 (2d Cir. 1995) (noting that the Act serves to "protect the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, and to require that the legal right to the disputed sums be determined in a suit for refund." (quotation marks omitted)).

attempting to collect.

**B. The IRS's Entitlement to Penalties and Interest**

Plaintiff argues that the automatic stay, the discharge injunction, the Plan and Amended

Plan's terms, and the full payment of the underlying tax liability discharged or otherwise eliminated

the penalties and interest the IRS is now seeking to collect. See generally Mem.; Mot. to Enjoin.

*1. Automatic Stay*

Plaintiff argues that the IRS's collection attempts violate the automatic stay and the

"breathing spell" it provides. Mem. at 10: Mot. to Enjoin ¶ 22. Pursuant to 11 U.S.C. § 362(a),

efforts to collect on certain claims against a debtor are automatically stayed upon the filing of a

bankruptcy petition. See United States v. Colasuonno, 697 F.3d 164, 171-72 (2d Cir. 2012). "This

automatic stay is a fundamental debtor protection, giving a breathing spell from the collection

process so debtors can attempt a repayment or reorganization plan to satisfy existing debt." Id.

(alterations and quotation marks omitted). The automatic stay applies to the attempted collection of

debts, not the accrual of interest. See Leeper v. Penn. Higher Educ. Assistance Agency, 49 F.3d 98,

104 (3d Cir. 1995). The automatic stay terminates, at the latest, upon the issuance of a discharge.

See In re Abbott, 447 F. App'x. 232, 233 (2d Cir. 2011) (citing 11 U.S.C. § 362(c)(2)(C)). Here,

Plaintiff received a discharge on November 15, 2011. Dkt. No. 208. The IRS collection efforts that

Plaintiff is challenging commenced in 2013. See Dkt. No. 249 at 9-13. Thus, the IRS has not

violated, and is not violating, either the automatic stay or the "breathing spell" it provides.[8]

---

[8] Even if the Act did not apply to bankruptcy court orders, the Court would still find that
Plaintiff had failed to show the requisite substantial possiblity that the IRS's collection efforts have
violated, or will violate, the automatic stay.

*2. Discharge Injunction*

According to Plaintiff, the discharge injunction he received prohibits the IRS's collection efforts. <u>See</u> Mem. at 1-2. Pursuant to 11 U.S.C. § 524, creditors are enjoined from attempting to collect on discharged debts. Plaintiff asserts that, had he received a discharge under Chapter 13, <u>see</u> 11 U.S.C. § 1328(a), the penalties and interest at issue would have been discharged. <u>See</u> Mem. at 1. The IRS does not dispute, and implicitly agrees with, this assertion. <u>See</u> Resp. at 3 (noting that, because the bankruptcy case was converted, Plaintiff was "depriv[ed] . . . of the super-discharge under . . . § 1328(a)"); <u>see also</u> <u>In re Monahan</u>, 497 B.R. 642, 648 (B.A.P. 1st Cir. 2013) (noting that a Chapter 13 discharge applies to interest on § 507(a)(8) priority tax claims). Nevertheless, this counterfactual is of no relevance, because Plaintiff's bankruptcy case was converted *before* a Chapter 13 discharge issued. He therefore received a discharge under 11 U.S.C. § 727(a). <u>See</u> Discharge. The Discharge did *not* apply to the interest and penalties the IRS is now seeking to collect, because those debts are nondischargeable under Chapter 7.

"A discharge granted under § 727(a) frees the debtor from all debts existing at the commencement of the bankruptcy proceeding *other than obligations § 523 of the Code excepts from discharge*." <u>Kontrick v. Ryan</u>, 540 U.S. 443, 447 (2004) (citing § 727(b)) (emphasis added). Section 523(a)(1) excepts from discharge taxes "of the kind and for the period specified in . . . section 507(a)(8)." 11 U.S.C. § 523(a)(1). Section 507(a)(8) applies to, *inter alia*, income taxes for which returns were due less than three years before the filing of the bankruptcy petition. 11 U.S.C. § 507(a)(8). And where a tax is nondischargeable, postpetition interest on that tax is also

nondischargeable and may therefore accrue and be recovered against the debtor personally.[9]  See

Bruning v. United States, 376 U.S. 358, 360 (1964) ("[L]ogic and reason indicate that post-petition

interest on a tax claim excepted from discharge . . . should be recoverable in a later action against

the debtor personally."); Salazar v. C.I.R., 338 F. App'x 75, 78 (2d Cir. 2009) (rejecting argument

that "post-petition interest could not accrue on non-dischargeable tax liability"); Bradley v. United

States, 936 F.2d 707, 709-10 & n.3 (2d Cir. 1991) (noting that the weight of authority holds that a

debtor is personally liable for postpetition interest on unpaid taxes); In re Hanna, 872 F.2d 829, 830-

31 (8th Cir. 1989).  Penalties based on nondischargeable tax liabilities are also nondischargeable, if

the tax is excepted under § 523(a)(1) and the penalties are imposed with respect to a transaction or

event occurring within three years of the petition's filing date.  See 11 U.S.C. § 523(a)(7); In re

Meyer, No. 11-73179, 2013 WL 865544, at *9 (Bankr. E.D.N.Y. Mar. 7, 2013).

Here, the IRS asserts that it is seeking postpetition interest for the taxes Plaintiff owed for

2005 and 2006.  The underlying tax liability is nondischargeable because the applicable returns were

due less than three years before the filing of the Petition.  Therefore, the interest the IRS is seeking

is nondischargeable as well.  The IRS is also attempting to collect penalties based on those same tax

years, which render those penalties subject to § 523(a)(1).  Because the penalties are for late filing

and payment that took place less than three years before the Petition was filed, the penalties are

imposed with respect to a transaction or event occurring within three years of the Petition's filing

---

[9] Postpetition interest generally may not accrue against, or be recovered from, the bankruptcy estate.  See In re Hanna, 872 F.2d 829, 830-31 (8th Cir. 1989) ("The general rule 'disallowing' the payment of unmatured interest out of the assets of the bankruptcy estate is a rule of administrative convenience and fairness to all creditors.  The rule makes it possible to calculate the amount of claims easily and assures that creditors at the bottom rungs of the priority ladder are not prejudiced by the delays inherent in liquidation and distribution of the estate.")

date. Both the penalties and interest the IRS is seeking are therefore nondischargeable by a Chapter 7 discharge—the discharge that Plaintiff actually received. <u>See</u> Discharge. Plaintiff's contention that the Chapter 13 discharge he would have received somehow trumps the Chapter 7 discharge he actually received is without merit. <u>See</u> <u>In re Quick</u>, 152 B.R. 902, 908-09 (Bankr. W.D. Va. 1992) ("And while it is correct that the . . . claim . . . would have been dischargeable if a chapter 13 discharge had been granted, *no such discharge was issued*. Instead . . . upon conversion to a chapter 7 proceeding, the penalty portion of the claim became nondischargeable." (emphasis added)). And as the penalties and interest the IRS is seeking were not discharged, its collection efforts do not violate the discharge injunction. <u>See</u> <u>In re Carey</u>, 2010 WL 5600987, at *7 ("Section 524 only enjoins creditors from trying to collect from the debtor debts that have been discharged.").[10]

### 3. *Plan and Amended Plan*

Plaintiff asserts that the Plan and Amended Plan render the debts at issue dischargeable or otherwise uncollectible. <u>See generally</u> Mot. to Enjoin; Mem. Generally, "[a] confirmed Chapter 13 plan is a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditors.'" <u>In re Murphy</u>, 474 F.3d 143, 148 (4th Cir. 2007) (quotation marks and alterations omitted); <u>see also</u> 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor."). But the otherwise binding nature of confirmed plans is limited in two significant ways. First, the conversion of a bankruptcy from Chapter 13 to Chapter 7 renders the Chapter 13 plan a non-final judgment that does *not* bind creditors. <u>See</u> <u>In re Dorsey</u>, 505 F.3d 395,

---

[10] Even if the Act did not apply to bankruptcy court orders, the Court would, for the reasons just given, find that Plaintiff had failed to demonstrate the requisite substantial possibility of prevailing on his claim that the IRS violated the discharge injunction.

399 (5th Cir. 2007) (finding that it would be "inequitable" to bind a creditor to a Chapter 13 plan where the bankruptcy was converted to Chapter 7); Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 378-80 (D.N.J. 2006) (citing cases and holding that conversion renders a confirmed plan a provisional and "non-final" judgment without "binding effect").[11] Thus, even if the Plan and Amended Plan explicitly discharged, or otherwise reduced or eliminated, the interest and penalties at issue, the IRS would not be bound and would be entitled to collect on those debts from Plaintiff.

Second, even where a plan is binding, it can discharge otherwise nondischargeable debts only if it does so explicitly. See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 263 (2010) (finding that a plan may discharge otherwise nondischargeable debt where a creditor is provided with sufficient notice, and deeming such notice sufficient where the plan at issue "proposed to repay only the principal on that debt, stating that the remainder—the accrued interest—would be discharged once [the debtor] repaid the principal"); In re Pardee, 218 B.R. 916 (B.A.P. 9th Cir. 1998), aff'd, 193 F.3d 1083, 1084, 1086 (9th Cir. 1999) (premising finding of discharge by plan on plan language that "expressly purported to discharge" nondischargeable debt); cf. In re Monahan, 497 B.R. at 652 (finding that, under Espinosa, interest had not been discharged because the plan contained no language "clearly providing for a

---

[11] Plaintiff correctly notes that 11 U.S.C. § 348 provides that a conversion order constitutes an order for relief under the new chapter and does not change the date of the filing of a petition. See Mem. at 2. But the carryover of a petition's filing date does not bear upon whether a plan's terms continues to bind creditors after conversion. Plaintiff also incorrectly asserts that, pursuant to 11 U.S.C. § 348(f), the valuation of "allowed claims" under a Chapter 13 plan will continue to apply if the case is converted to Chapter 7. Mem. at 6. Pursuant to 2005 amendments, 11 U.S.C. § 348(f)(1)(B) provides that "valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, *but not in a case converted to a case under chapter 7.*" (emphasis added); see also In re Lang, 437 B.R. 70, 72 n.3 (Bankr. W.D.N.Y. 2010). Moreover, even if this carryover provision did apply to Chapter 7 cases, it speaks only to the valuation of *secured* claims. The IRS had no such claims.

16

discharge"); In re Artisan Woodworkers, 225 B.R. 185, 191 n.11 (B.A.P. 9th Cir. 1998) (distinguishing In re Pardee and finding that nondischargeable debt was not discharged where the plan "did not purport to discharge postpetition interest on the nondischargeable tax debt").

As discussed *supra*, once Plaintiff's bankruptcy case was converted, the penalties and postpetition interest became nondischargeable. Thus, the Plan and Modified Plan, even if they were binding after conversion, would have to explicitly discharge those debts. They did not. Although both provide that interest ceased accruing on the Petition filing date, neither interest-accrual provision references Plaintiff's personal liability, let alone explicitly discharges the interest and penalties at issue. See Plan at 2 ("The date this case was filed shall be the effective date of the plan as well as the date when interest ceases accruing on unsecured claims."); Modified Plan at 1 ("The date of the filing of this case is the date that all interest and fees cease accruing and all accounts become current."). Both provisions are entirely consistent with, and do not explicitly purport to alter, the well-established rule discussed *supra* that postpetition interest may not accrue against an estate but may accrue against the debtor personally. Cf. In re Jaylaw Drug, Inc., 621 F.2d 524, 529 (2d Cir. 1980) (finding, in light of general rules of interest accrual, that proof of claim submitted by the IRS explicitly stating that no interest would accrue after the filing of the proof of claim should be interpreted to apply only to interest against the estate).

Although the Modified Plan does provide that Plaintiff "seeks discharge of all debts addressed in this plan unless specifically prevented by court order or other law," it fails to explicitly define either the penalties or postpetition interest as "addressed" debts. Modified Plan at 1. The Modified Plan nowhere refers specifically to the IRS's claim for penalties; instead, it mentions only "allowed secured creditors's [claims]" generally. Id. at 2. And, as the IRS never submitted a claim

for postpetition interest, the general reference to unsecured claims cannot render pospetition interest a debt "addressed" by the Modified Plan. Moreover, the Modified Plan provides that the "debtor and all entities will be bound by the terms of confirmed plan *and discharge*," thereby indicating that the Modified Plan and the bankruptcy's court's discharge order were to be read in harmony. Id. at 3. As discussed *supra*, the Discharge did not discharge the debts at issue. Thus, neither the Plan nor the Modified Plan provided the requisite explicit discharge of the penalties and interest the IRS is seeking.

For the same reason, Plaintiff's argument that the IRS's failure to object to the Plan or Modified Plan constitutes a waiver of its claims is unavailing. See generally Mem. Because neither explicitly purported to discharge or eliminate the debts at issue, the IRS's failure to object is of no consequence. See In re Artisan Woodworkers, 225 B.R. 185 at 191.

### 4. Full Payment

Plaintiff also argues that, because the IRS's claim for unpaid taxes was "paid in full" pursuant to the Plan and Modified Plan, the IRS has "no viable claim for . . . post petition interest and penalties to attach to, [and] there could be no ongoing interest and fees and certainly no princip[al] to attach them to post conversion." Mem. at 3-4. But it is well established that a debtor's full payment of an underlying tax liability does not discharge, or otherwise prohibit the collection of, nondischargeable prepetition penalties or postpetition interest that accrues before full payment of the underlying liability. See Leeper, 49 F.3d at 104 ("[E]ven if the nondischargeable debt has been paid in full by the bankruptcy estate, accrual of post-petition interest is not precluded."); In re Jaylaw Drug, Inc., 621 F.2d at 526-529 (finding that debtor was liable for postpetition interest and prepetition penalties on fully paid tax debts); In re Becker's, 632 F.2d at

250 (finding that interest was nondischargeable and collectible even where plan called for payment of "full principal debt"); In re Pardee, 218 B.R. at 922 (reversing bankruptcy court's finding that "one hundred percent payment of principal and prepetition interest pursuant to the [p]lan extinguished or discharged postpetition interest on the [c]laim"); In re Quick, 152 B.R. at 907 ("[F]ollowing confirmation of a plan, even though a tax debt is paid in full pursuant to the plan, the debtor nonetheless remains liable for interest accruing from the date of the filing of the . . . petition."). Thus, the full payment of the 2005 and 2006 unpaid taxes did not discharge the concomitant penalties and interest.

However, to the extent Plaintiff is arguing that postpetition interest on an unpaid tax debt cannot continue to accrue once payment of that debt has been made to the IRS, he is correct. See In re Johnson, 146 F.3d 252, 260 (5th Cir. 1998); In re Quick, 152 B.R. at 907 (noting that a debtor is liable "for interest accruing from the date of the filing of the . . . petition *until the date of the payment of the underlying tax debt pursuant to the plan*"(emphasis added)); 26 U.S.C. § 6601(a) (noting that the interest period terminates on the date the penalty is "paid"); see also In re Ross Nursing Home, 2 B.R. 496, 499 (Bankr. E.D.N.Y. 1980) (noting that the purpose of interest is to "compensate a party for the loss of use of money").

The IRS is therefore not entitled to interest accruing on the underlying unpaid taxes after those taxes were paid in 2009. If Plaintiff demonstrated a substantial possibility that such postpayment interest necessarily constitutes a portion of the interest the IRS is now seeking, he would be entitled, at least with respect to that postpayment interest, to the injunctive relief he seeks. See Randell, 64 F.3d at 106-7. But he cannot make such a demonstration. The IRS is seeking a total of $370.98 in penalties and interest. Even if the entire payment the IRS received for its

19

unsecured general claim was apportioned to the penalties at issue here, Plaintiff would still owe

$248.26 in penalties, leaving $122.72 in interest. Plaintiff has demonstrated that, by no later than

September 2009, he had paid the underlying tax debt. Interest therefore accrued on the underlying

unpaid tax amount of $504.91 for approximately 19 months. The applicable interest rate is 3% plus

the federal short term interest rate. See 26 U.S.C. § 6621; see also Index of Applicable Federal

Rates (AFR) Rulings, http://apps.irs.gov/app/picklist/list/federalRates.html (last visited November

8, 2013) (providing the federal short term interest rate). Interest is compounded daily. 26 U.S.C. §

6622. The Court's calculations indicate that interest accruing on the unpaid taxes before September

2009 amounts to less than half of the interest the IRS is now seeking.

However, although the IRS does not explicitly state that it is seeking interest on the penalties

at issue, see generally Resp.; Mot. to Vacate, it is entitled to interest on at least some, and possibly

all, of those penalties, see 26 U.S.C. § 6601(e)(2). Interest on the late-payment penalties would not

begin accruing until Plaintiff received a notice and demand from the IRS for those penalties, see id.

§ 6601(e)(2)(A), but Plaintiff has not asserted that such notice was not issued, and thus has not

demonstrated that "no circumstances" exist under which the IRS would be entitled to such interest.

Randell, 64 F.3d at 106-7. Moreover, no such notice and demand is required to trigger interest on

the late-filing penalties. Id. § 6601(e)(2)(B). Under the highly deferential standard of the judicial

exception to the Act, the Court must assume that the IRS is seeking interest to which it is entitled.

Interest on unpaid penalties continues to accrue until the penalties are paid, see id.

§ 6601(e)(2), and has therefore been accruing for nearly six years. The Court's calculations indicate

that such interest accounts for the remainder of the total interest the IRS is now seeking. Certainly,

the IRS's failure to indicate explicitly that it is seeking interest on penalties or to detail its

apportionment of Plaintiff's liability among unpaid penalties, interest on unpaid taxes, and interest on unpaid penalties, has impeded the Court from determining with certainty whether the IRS is improperly seeking post-payment interest on the non-penalty tax liability. If the IRS bore the burden of demonstrating its entitlement to the interest it now seeks, its submissions would be woefully inadequate. But under the judicially created exception to the Act and this Circuit's standard for an injunction pending appeal, Plaintiff bears the heavy burden of demonstrating a substantial possibility that, under the "view of the facts that is most liberal to the [IRS]," "no circumstances" exist such that the IRS could prevail on its claim for interest. <u>Randell</u>, 64 F.3d at 106-7. The Court's analysis reveals that such circumstances may well exist, *i.e.*, that the IRS is entitled to and is seeking interest on the unpaid penalties at issue, and that such interest, combined with pre-payment interest on the underlying non-penalty tax liability, accounts for the total interest the IRS is now seeking.

### 5. Conclusion

Plaintiff has failed to demonstrate a substantial possibility that the judicially created exception to the Act applies. His Motion must therefore be denied.

## V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt. No. 1) for injunctive relief pending appeal is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:          November 13, 2013
                Albany, NY

Lawrence E. Kahn
U.S. District Judge